May it please the Court, my name is Abraham Arditi. I represent the appellant, Stephen Ray. I will like to reserve about three minutes for rebuttal. Also, I will refer to the employer here as Van Waters and Rogers, which is the name of the company when Mr. Ray worked there, the name of the company as used in the trial court and in the briefs on appeal. This appeal raises two instructional issues. The first arises out of the liability instruction on the ADEA claim, and the basis for the appeal there is that the instruction requires us to do something besides show that age was what drove Mr. Ray's termination. In other words, all the statute requires is that age be the motivating factor. Here, Mr. Ray was required to show three or four additional things. The second instructional error arises out of the giving of what's called the business judgment instruction. Going to the first error first, the additional language that we have difficulty with in the ADEA instruction is this. Beyond establishing that age was a motivating factor, Mr. Ray was required to establish that he was, quote, replaced by a substantially younger person with equal or inferior qualifications. This language was drawn from one formulation of the McDonnell Douglas prima facie case. We believe that it was the wrong formulation, not one that applies to the facts here. We also believe that the McDonnell Douglas prima facie case was inapplicable here because there was direct evidence of discrimination. Counsel, I'm inclined to, just speaking for myself, agree that the instruction was error, especially now that we've seen FOSTA in its final form. But I'm having some difficulty understanding why in the context of the case as a whole and the record as a whole, it was an error that requires reversal and caused prejudice in the circumstances of the case. Let me see if I can explain that here. In the normal discrimination case, one can establish discrimination through two things, a combination of two things. A, those facts that established the prima facie case, and B, the falsity of the reason that the employer gives for doing what it did. The instructions here made it impossible for us to do that. Elements 1 through 4 of the instruction are essentially a formulation of the prima facie case. Most jurors reading that instruction are going to say that you have to prove 1 through 4 and 5 independently. In other words, if you could use 1 through 4 to prove 5, why would they be separate elements? So what that leaves you with is proving discrimination solely by showing the falsity of the employer's stated reason. But if you look at the so-called business judgment instruction, instruction 13, it says that you can't find discrimination solely because you disagree with the employer's stated reason. And what that means here... Well, that doesn't have anything to do with falsity. Well, I think it does. It seems to me that what that instruction does, it says you don't get to be the employer. You might have let this skate, but it doesn't require the employer to. You might let people be laid or whatever problems you might think that the employee has, but I don't see how that detracts from the falsity issue. Well, I think that a natural reading of it, I'm sorry to disagree, but is that it is false. It is a statement of falsity if you disagree with a reason. In other words, if the employer says we hired so-and-so because he was the most qualified and the jury doesn't think that person was the most qualified, the jury is going to say we disagree with that. We don't think he was the most qualified. And that's the same thing. It's saying that the agreement was false. I guess I don't see those as the same. You can disagree. You can say, a jury can say one of two things. Well, I wouldn't have found that person qualified, but it's clear that the employer really thought so, in which case the employer wins. But if the jury said he isn't more qualified and I think the employer is just lying when they even rely on that, then they find for the plaintiff, even under these instructions, at least that's how I would read the instructions. Well, then I guess I haven't made my point as clearly as it could be made. I do think that the combination of those two instructions makes it impossible for us to prevail on circumstantial evidence. I also think that ---- And what was the evidence that you think the jury would have been persuaded by under your proposed instructions that they were not persuaded by under these instructions? Why did it actually make a difference as the case played out? Well, one reason is that the use of the word replacement. We had a very unusual kind of employment decision here. We had an employee whom everyone agrees was doing a competent job. And who was a good employee? They brought in somebody new. A personnel form describes him as a replacement for my client. But the employer said he really wasn't a replacement. What they did was they eliminated my client's job and substituted that job with a new job. And so it wasn't the replacement. And that was a factual issue at trial on which the evidence could have gone either way. And the fact that we had to prove that it was a replacement prejudiced us. The second thing is that we had to show that Mr. Ray was at least as qualified as the new person who came in. Well, the new person who came in had a degree in engineering, which Mr. Ray didn't. And that was, again, something that received a lot of attention at trial, whether an engineering degree was necessary or not. I'm sorry. I guess then I have to go to the next step because I'm missing something. If I've read part of the record right, evidence for the jury, it appears that there was this dialogue between his unit and management about his supervisor wanting another engineer. Right. Your client's not a licensed engineer. But the supervisor liked him. He's doing his good job for what he does. And then there's a question about what he does versus what licensed engineers do. After you wrap all that up, the push came to shove, according to some of the evidence, I think, that they said, we don't want to hire an engineer. Management says you can't get any more people. So to make room for the engineer, ostensibly, they let your client go bring in the engineer. Sounds like apples and oranges to me. Sounds like it wasn't a replacement. At least that's some of the evidence. Now, how do we deal with that? Well, we had to prove that it was a replacement. I think, you know, you made my point exactly. We had to show to prevail that it was a replacement. Prevailed, apparently, on the evidence. Now, how does that relate to the instruction? Well, the instruction says that we had to show him it was a replacement. And if it wasn't a replacement, we couldn't win, even if we showed that the termination was driven by age. In other words, Well, what's wrong with that? It seems to me if the premise is that your client is not a licensed engineer, and if there is evidence that they wanted a licensed engineer in that position, if the evidence is you can't get any more people and you've got to make room to get your person, it was a question of replacing someone who's very, very good in what he does with someone that does a different job, and so it's an apples and oranges again. Well, but see, the jury could also have seen, if it was properly instructed, that that was a ruse to get rid of Mr. Wright. And let me explain why. First of all, You instructed on pretext, didn't you? There was no pretext instruction, no. There was. There wasn't, that's right, in any of those. No. It was just, and that's one of the reasons why the so-called business judgment instruction causes so much trouble, in our view. But to get back to this, a jury could have found on the evidence that what happened here was just a ruse to get rid of an older worker. First of all, the memo that Mr. Dobrynin described his need in says that he wanted someone to work on small projects, and those are exactly the kinds of projects Mr. Wray was working on. They raised the number of engineers, two of whom were unlicensed, from two to three by bringing this new person on, and then seven months later they laid off one of them for lack of engineering work. Mr. Dobrynin told the new person, the new engineer, Mr. Pritchett, when he hired him, essentially that they didn't have a need for a new engineer, but he was going to create a need through internal marketing by convincing the people throughout the company that they needed an engineer. So that's not a true need. And the last thing, of course, is that on this business purpose. So he said, I'm going to drum up business internally. It didn't work. Well, that may be true, and employers are allowed to have a business purpose, but a business purpose is just evidence alongside other evidence in a case. And the jury can accept it or reject it. Here we think we had a harder time showing that it should be rejected because of the instructions. You gave us the additional authority of Zang. Right. And that relates to the fact that you also didn't prevail on your Washington State claim. Why don't you explain your position to me on that? Because it seems to me that if you can't prevail on the limited instruction given in the Washington State, then how does the other, as Judge Graber says, why isn't it just harmless error? Because there are two different standards. Under the federal standard, it was a motivating factor. And if you look at instruction 11A, which is the same defense instruction, it makes it very clear that it had to be a motivating factor to any degree. But then you get into the question of how you interpret those terms and whether they're equal and what the law is in the circuits relative to the interpretation of those terms. Well, no. What I'm referring to is this language in 11A, even if the plaintiff's age had played no role. So reading 11A with 11 suggests that the motivating factor had to be a motivating factor to any degree. If you read Washington cases on the substantial factor test, the substantial factor test was especially designed to be a stiffer test than the motivating factor test. And the two cases there are the Allison case and the Mackey case. So we had to show more, a higher quantum of discrimination to prevail on the state claim. Finally, I do want to address briefly the business judgment instruction. Under Reeves, a 2000 U.S. Supreme Court case, the court there very clearly held that falsity of an employer's stated reason is affirmative proof of discriminatory motive. And I think that instruction 13 makes it very difficult for the jury to see that falsity of the employer's stated reason is affirmative proof of discriminatory motive. I would like to cite one case that was decided after our reply brief was in, and I apologize for not submitting it with the supplemental instructions. And this is on the use of a pretext instruction. A pretext instruction is essentially the reverse of the business judgment instruction we had here. And the Tenth Circuit held in Townsend v. Lumberman's mutual casualty, 294 Fed Third at 1232, that it was reversible error not to give the pretext instruction. So in other words, not telling a jury that falsity is affirmative proof of discriminatory intent is reversible error. And here is the question. No. And we're not complaining about that here. But we are complaining about the fact that the instruction that was given basically says just the opposite of what the jury should have been told. And we're not complaining about the fact that the jury wasn't told about the pretext, but it certainly shouldn't have been told that it in essence could not find discrimination from falsity of the employer's reasons. So I think I have about a minute left, and I'll try to reserve that for rebuttal. You may do that, Mr. Williams. Thank you, and good morning. Well, I, again, just speaking for myself, not for the panel, I'm inclined to think that the prima facie instruction was erroneous in view of this Court's and the Supreme Court's decision at Costa and Songvy. I want you to take for purposes of my question that that's an assumption. Where, in your view, why isn't there prejudice for the reasons that counsel has stated? Why should we hold that any error was harmless in the context of the way the case was tried and argued? I'll try to respond, Your Honor. The Costa decision in the Ninth Circuit, not that of the Supreme Court, but the Costa decision in the Ninth Circuit discussed various alternative ways of proving a case. And so with due respect, I believe that actually Costa at the Ninth Circuit level, which was not reversed but rather affirmed by the Supreme Court, recognized that the McDonnell-Douglas paradigm is still a model that is used and usable. It is true that Costa ---- It's usable to decide whether a case goes to the jury. This case went to the jury. It's not that no longer the jury's ---- the jury has only one question to answer at that point, which is whether the plaintiff has proved discrimination. So go with my question. All right. Assume for the sake of argument that the instruction was wrong. Why did it make any difference or did it make a difference here? It did not, Your Honor. And the reason I say that is this. Sangvi, which is probably the most recent, more recent in the Ninth Circuit than Costa, on the issue of what should or shouldn't be presented to the jury, said that ordinarily the burden-shifting analysis should not be presented to the jury. And in Sangvi, in making that decision, the Court noted a majority of our sister circuits concur in this view, although none, none has found the error substantial enough to warrant reversal. And, in fact, in Sangvi, although both the prima facie case instruction was given and it was combined with a direct or, excuse me, a special verdict form that went through the burden-shifting analysis, it was held in Sangvi that that was not reversible error. And so I think that while ---- Kagan, is that your position? No, I don't take that position. The ---- but the standard for what is harmless error is fairly well defined and stated in various ways, and that is that the record taken as a whole, does it sustain the verdict that was announced by the jury in this case? Well, would it sustain it if ---- that's really a different question. The question of whether there's evidence to support the jury's verdict isn't really the same as whether the jury properly instructed before it reached the verdict. If there's evidence both ways, the parties are entitled to have a correct statement of the law, even if the evidence is sufficient. Well, you've obviously asked me to presume that my client's position is incorrect with respect to the initial instruction, and I would simply note that the instruction that was given is verbatim the Ninth Circuit model instruction, which this week is still appearing on the Ninth Circuit website, even though the introductory comments to the website indicate that it will be constantly updated. So to the extent that this is intended to guide judges within the Ninth Circuit, that model instruction is still there. I run into those conflicts all the time on our model instructions. I'm not too sure we can be driven by the model instructions. My final analysis, you present your case. If we find the law is contrary to the instruction, I think we'd have to say so, don't you? Absolutely, Your Honor. And I wouldn't quibble with that in the least. I know the problem, because when we do see that, that model instruction, then we go to the cases, and as you argued, we don't see any reversal. So I don't know what that means. But we still have a right. I think we still have to look at it. You have a right, absolutely. And Judge Zille, as the trial judge here, not only had a right to look at other cases and other authority, but a duty to do so. And I think that the colloquy on the jury instructions in this case reflected that he took that responsibility very seriously. So I think counsel made a good argument that's troubled me, and that is the facts in this case splatter all over. I mean, they could go either way. And if he has a lower burden under the federal claim, only to show that motivating factor, if you remove all the other stuff, it seems a pretty tough case, because in this case they had to sort out, you know, was he a replacement? Did they really need the engineer? And all those facts. So it seems, though, that instruction becomes highly important in this case. And I – how do you ignore those prima facie issues in face of this conflicting evidence and very tight issues? It's true. And I guess I would posit that the prima facie case still does have a meaningful role and a meaningful role for the jury, notwithstanding the Rule 50 decision at the end of the first case. But it requires them to go through, I think, three steps that they wouldn't necessarily have to when there's all these confusing issues and very sharp disagreement about, you know, whether he's a replacement or what they were trying to do in that department. That's correct, Your Honor. But as Judge Zille posited to Mr. Arditi when he was taking exceptions on the jury instructions, he asked Mr. Arditi whether Mr. Arditi would object if he, Judge Zille, ruled as a matter of law on the elements of the prima facie case. Mr. Arditi responded, yes, absolutely, I would object to that. So what does that mean? Did he waive the issue? Did he just stop? What is this? No, but what Judge Zille's comment made clear was that although there was enough evidence of a prima facie case to survive the Rule 50 motion, that there was still a role for a fact finder, in this case the jury, to make a determination as to whether or not the prima facie case had been met. What Judge Zille commented in explaining on the record his reasons for giving that instruction is that this is invited error by counsel. In other words, if there's a factual dispute and the judge says I'll rule as a matter of law, and if counsel says I want it to go to the jury, is he inviting an error if there was any? I don't believe that Mr. Arditi would have invited an error. So what is the nature of his comment then? The nature of his comment was to explain why he was leaving the elements of the prima facie case. As given in the model instruction, why under the facts of this case he was leaving it? He noted that Mr. Arditi throughout, including trial briefs, opening statement, and then again in closing argument, had argued that this was a replacement case, that there had been a replacement. And much of Mr. Arditi's proof, when you look at the record as a whole, and this was about whether or not what Stephen Ray, the plaintiff, did was identical and required the same qualifications as what Mr. Pritchett, who was hired, what his qualifications and what he did. That was the basis of Mr. Ray's case. That is to say that he and Mr. Pritchett were interchangeable and that the reason that there was age discrimination here was that what they did, that Mr. Ray could have done exactly what Mr. Pritchett did. That was the theory that's argued throughout. That is what the record as a whole demonstrates was Mr. Ray's theory of the case. Given that theory of the case, given that he was saying he had been replaced by someone who was no more qualified than he, Judge Zille was saying, in effect, I think that's a disputed fact and there has to be a decision by the trier of fact, and that is why I'm going to go with the model instruction as opposed to modifying it based on alleged direct evidence or otherwise, that given the way this case was presented and on the record as a whole, this instruction was the appropriate one. Now, in terms of the Costa decision, and I would note that at the Supreme Court level, that decision was addressing in the Title VII context the quantum or the type of proof necessary to get a mixed motive instruction. In this case, that's not debatable. We got a mixed motive instruction at Mr. Arditi's urging. That was one of the alternative forms within the model instruction, and he got the motivating factor rather than the determining factor instruction. Can I clarify in my mind what you just said? You're saying then instruction number 11, which contains the prima facie elements, was properly in there because the defense theory of replacement demanded that because there was a disputed issue of fact as determined by the judge, that the jury make a determination on those facts, and that would be the prima facie issues? The plaintiff's theory of the case, not the defense theory. Excuse me, the plaintiff. I'm sorry. The plaintiff's theory of the case, yes, as presented pretrial in arguing the jury instructions. Counsel's argued replacement here. You're just saying that because of the disputed issue of fact on the plaintiff's theory of the case, you had to give or it was appropriate to give the prima facie case instruction. It was very appropriate to give it on the facts of this case. Now, would we in 2003, as Judge Graber pointed out, having seen COSTA, having seen the variance on various types of ways of proving a discrimination case, would we still have that in there? Well, we know that the Ninth Circuit, at least on its model instruction, has not yet made a change. And so although it demands and requires trial judges to look at instructions and tailor them to the appropriate facts of the case, judges might not go that way now. But we do know from Song v. and from other cases that having given that instruction, there is no reversible error. Well, Song v. was a harder case for the plaintiff because the alleged error had not been preserved. There had been no objection made at the trial level. And if I'm correctly understanding the record here, there was a contemporaneous objection at the trial level. There was an objection, Your Honor. And if you look at the record as to what the objection that was made, Mr. Arditi was arguing that on the strength of Aikens v. U.S. Postal Service and Bazemore v. Friday, two cases from the 1980s, that it was improper on the basis of that law to give the instruction that included the prime infatia case. Well, regardless, I guess, of the specifics of his argument, I guess I'm questioning how far Song v.'s statement takes you, that it's not reversible error, because my memory of the case is that Judge Thompson wrote that it had been waived, that the objection had been waived. That is correct, Your Honor. And so we have a little bit, for your side, a little bit harder question here. We absolutely have a somewhat different record in terms of the objections that were taken. The point that I would want to make about Song v. is that the Ninth Circuit observed in ruling on Song v., even before it got to the point of whether or not the objection had been preserved, when it was surveying the laws of other circuits and deciding that it was going to go consistent with the Ninth Circuit en banc decision in Costa, with the trend within the circuits of not requiring the burden-shifting paradigm of the entire McDonnell-Douglas analysis, that they were going to follow that. But again, they noted that in no other circuit that they were observing what was happening, that none of those other circuits had found the giving of those instructions to be reversible error. And so they made that statement before they ever got to the point of making the fact that it hadn't been preserved in that particular case. I don't argue with the fact that it was preserved here. I have a question about a comment your opponent made, is I got what he said, and I think he quoted a State case, that the Washington law was intended to set a higher standard. Now, assuming that's what he said, that's the way I got it. I was reading the instruction that set out the elements of the State law claim, and I can't see the way that instruction's worded that it really does, as presented to the jury, present a higher standard. Do you have a comment on that? The standard under State law is that the age must have been a substantial factor. And that, again, goes to the harmless error point, that we would say that motivating and substantial are more or less equivalent in the fact that substantial error was not found on the State law claim where there was no prima facie case, no burden shifting or anything. Except couldn't a jury have potentially done exactly what opposing counsel is arguing and said, hmm, well, one thing here says just a motivating factor, and the other one says substantial, and have thought about them differently. And the fact that something isn't up here doesn't mean that it's not, you know, halfway to that point. Well, it's true that if in the 45 minutes that the jury took that they'd had time to parse those things through, that's possible. But I would just note that the Ninth Circuit in the Zhang case, which Mr. Arditi submitted as supplemental authority, that there is the comment that this issue as to whether substantial and motivating are the same or different has not been decided. And certainly the Zhang case does not decide it. It simply says it's undecided and it's not clear. And so I don't think that there has been any determining decision on that. I know I'm in my sum-up stage. Let me just comment briefly that I believe the business judgment instruction clearly the model instruction suggests that courts consider giving this in an age discrimination case, it is entirely within the discretion of the trial court judge. And I think that discretion was exercised properly here. Counsel, before you sit down, I would ask you the same question I asked of counsel in an earlier case. The parties in this case have not taken advantage of the mediation services of the circuit as far as I could tell from the docket. Is that a correct understanding of what's happened here to this point? What I will tell you is that we were contacted shortly after the appeal was filed. Both sides did have discussions with the ‑‑ I'm not sure if he was the mediator or the person who would have arranged the mediation had we pursued it. Both parties presented their views of the matter and the case. And I think that the Ninth Circuit's mediation representative concluded that it would not be worthwhile to pursue it. But we certainly did communicate. Both sides did that. Thank you very much. Thank you. We have a minute and change left for Donald. Thank you, Your Honor. On Songvi and comments on whether or not McDonnell Douglas shifting burden instructions are prejudicial, I think that this instruction is more prejudicial than a complete set of shifting burden instructions because a complete set of shifting burden instructions will tell the jury that the prima facie case can be used as evidence of discrimination. On the model instructions, yes, this instruction was drawn from the model instructions. But there are a variety of model instructions in the Ninth Circuit set on disparate treatment. And this is the only one that has elements of the prima facie case, the Title VII, the ADA, and, in fact, the other ADEA, age discrimination instructions, do not. Finally, it was not our theory of the case that Mr. Ray was a replacement. If the Court goes back to the summary judgment papers, I think you'll see that we resisted that from the outset. Obviously, we had to address it at trial. And obviously, we had to address it in detail in closing argument. But we, from the start, said that this formulation that Van Waters and Rogers was promoting for the prima facie case was an inappropriate one on the facts here.  Thank you.
judges: Brunetti, Tg Nelson, Graber